No. 14-2957

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

OCTAVIA MITCHELL,

Plaintiff-Appellant,

v.

CITY OF CHICAGO, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 11-cv-2741
The Honorable Sharon Johnson Coleman, Presiding

**BRIEF OF DEFENDANTS-APPELLEES**

STEPHEN R. PATTON
Corporation Counsel
  of the City of Chicago
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 742-4961

BENNA RUTH SOLOMON
 Deputy Corporation Counsel
MYRIAM ZRECZNY KASPER
 Chief Assistant Corporation Counsel
JONATHON D. BYRER
 Assistant Corporation Counsel
  <u>Of Counsel</u>

# TABLE OF CONTENTS

_____

Page

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

**JURISDICTIONAL STATEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**ISSUES PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**STATEMENT OF THE CASE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**The events of April 24, 2010.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**The Mitchell lawsuit.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**SUMMARY OF ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

**I.     MITCHELL HAS WAIVED BOTH OF HER ARGUMENTS ON APPEAL BY FAILING TO RAISE THEM BELOW.**. . . . . . . . . . . . . . . . . . . . . .  11

**II.    MITCHELL'S ARGUMENTS ARE WITHOUT MERIT.**. . . . . . . . . . .  12

**CONCLUSION.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

**CERTIFICATE OF SERVICE.**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

# TABLE OF AUTHORITIES

_____

Page

**Cases**

Galvan v. Norberg,
        678 F.3d 581 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Kapelanski v. Johnson,
        390 F.3d 525 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Latino v. Kaizer,
        58 F.3d 310 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Puffer v. Allstate Insurance Co.,
        675 F.3d 709 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Coffman,
        94 F.3d 330 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Pressley,
        100 F.3d 57 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Smith,
        31 F.3d 469 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Willis v. Lepine,
        687 F.3d 826 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C.§ 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# JURISDICTIONAL STATEMENT

—————————

Plaintiff-appellant Octavia Mitchell's jurisdictional statement is not complete and correct.  On April 25, 2011, Mitchell, through counsel, filed a complaint, on behalf of herself and as representative of the estate of Izael Jackson, against the City of Chicago and unknown police officers, alleging claims of excessive force under 42 U.S.C. § 1983 and assault and battery under Illinois law.  R. 1.[1]  On December 16, 2011, Mitchell filed an amended complaint, naming Chicago Police Sergeant James Cascone and Chicago Police Officers Jesse Belcher, Francisco Gonzalez, and Nelson Lopez as additional defendants.  R. 17.  The district court had jurisdiction over Mitchell's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343(a)(4), and supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367(a).

On March 5, 2014, the district court granted a directed verdict in favor of Sergeant Lascone and Officer Lopez.  Tr. 419.  The jury returned a verdict in favor of Officers Belcher and Gonzales on March 7, 2014, Tr. 845-46, and the district court entered judgment for all the defendants that same day, R. 94, 95.  Mitchell moved for a new trial on April 4, 2014, R. 98, and the district court denied that motion on August 1, 2014, R. 105, 106.  Mitchell filed her notice of appeal on August 29, 2014.  R. 107.  This court has jurisdiction over this appeal from a final judgment

---

[1]  We cite the district court record as "R. ___," the trial transcript as "Tr. ___," and Mitchell's opening brief as "Mitchell Br. ___".  Because the appendix to Mitchell's brief lacks page numbers, we cite the materials in that appendix by their record cites.

under 28 U.S.C. § 1291.

## ISSUES PRESENTED

───────────────

1.      Whether Mitchell waived her arguments for reversal by failing to adequately present those arguments to the district court.

2.      Whether the district court abused its discretion by denying Mitchell's motion for a new trial, where the court did not commit prejudicial error by advising the jury that it could continue to deliberate for a short time longer at the end of the day on Friday or return on Monday morning to resume its deliberations, and where the jury's verdict was not against the manifest weight of the evidence.

## STATEMENT OF THE CASE

───────────────

**The events of April 24, 2010.**

On the evening of April 24, 2010, Sergeant Cascone and Officer Belcher were on patrol in a marked squad car as part of the Chicago Police Department's Mobile Strike Force, a citywide unit assigned to areas of recent shootings or areas of high levels of gang or illegal narcotic activity.  Tr. 423-26, 474.  Officers Lopez and Gonzales were patrolling in a marked squad car behind them.  Tr. 426.  While on patrol, the officers observed a white Buick without a front license plate traveling northbound on State Street and decided to perform a traffic stop.  Tr. 424-25.  When the Buick turned east on 63rd Street, the officers activated their patrol car's lights and sounded their siren briefly; the Buick's occupants looked over their shoulders at the officers, but did not stop or slow down.  Tr. 427-28.  Instead, the Buick

continued east on 63rd Street and turned north on Indiana Avenue. Tr. 428. After turning on to Indiana, the Buick repeatedly sped up and then slowed down, which indicated to Sergeant Cascone that the occupants were preparing to bail out of the vehicle and flee the area. Tr. 429.

The Buick then turned east on 61st Street and slowed down to an idle, at which point Jackson "popped out of the passenger compartment and immediately raised a handgun" at the officers and fired "at least eight to ten shots." Tr. 430. As the Buick slowly idled forward, Jackson kept pace with the vehicle by walking slowly backward with his back to the passenger door, firing at the officers as he did. Tr. 431. After a brief pause in the gunfire, Jackson stepped away from the Buick and began walking toward the officers, continuing to point his weapon at them as he did. Id. At this point, Officer Belcher, who had taken cover when Jackson opened fire, Tr. 480, began firing his service weapon at Jackson through the front windshield of his patrol vehicle, Tr. 432, 481, while Sergeant Cascone radioed for backup, Tr. 438-39. Jackson stopped walking toward the officers, and the Buick then sped away, leaving Jackson behind. Tr. 432-33, 483-84. Jackson began running southeast away from the officers while looking over his shoulder and continuing to exchange gunfire with Officer Belcher, who fired two or three shots at Jackson as he fled. Tr. 433-36.

When the shooting began, Officer Gonzales could not see who was shooting because his view was blocked by Sergeant Cascone's patrol vehicle, so he asked Officer Lopez to stop the car so he could get out and see who was shooting. Tr. 555.

3

When Officer Lopez exited the vehicle, he saw Jackson pointing a gun at Sergeant Cascone and Officer Belcher, Tr. 556, and firing at the officers, Tr. 559. Officer Gonzales then saw Jackson begin running southeast, still pointing his gun at the officers. Tr. 560. At this point, Officer Gonzales raised his rifle and began to fire. Tr. 436, 560. Jackson fired two more shots, and Officer Gonzales fired one more time; Jackson then fell to the ground. Tr. 560. After confirming that Jackson was not trying to get back up, Officer Gonzales ran towards where Jackson had fallen. Tr. 561. The gun was still in Jackson's hand, and Jackson continued trying to pull the trigger even as he lay on the ground, Tr. 490-91, but the gun was in "slide lock" because it was out of ammunition, Tr. 447-48. Officer Lopez kicked the gun out of Jackson's hand, Tr. 521, and handcuffed Jackson, Tr. 447. Jackson was transported to Stroger Hospital, Tr. 292, where he died of his wounds the next morning, Tr. 296.

Jackson's gun was later determined to be a Glock Model 19 9-millimeter semi-automatic handgun, the serial number of which had been obliterated. Tr. 658-59. Forensic testing confirmed that sixteen shell casings recovered from the scene were fired from that gun. Tr. 661-62. Testing of Jackson's hands also revealed gunshot residue, indicating that he had either recently fired a gun or had been in contact with or in proximity to a recently-fired gun. Tr. 701-03.

**The Mitchell lawsuit.**

Following Jackson's death, Mitchell filed this suit. R. 1, 11. The case proceeded to a jury trial, during which Mitchell presented only two alleged witnesses to the shooting, Taza Williams and her mother, Sandra Williams. Taza

testified that, on the night of April 24, she was outside Sandra's home when she heard "three or four" gunshots and ran back inside her mother's house.  Tr. 170. Inside, Taza looked out a window, Tr. 171, from which she said she could see Jackson running from "several" police officers, Tr. 172.  According to Taza, she saw the police fire five or six shots at Jackson, who fell to the ground, after which the officers "started dragging, kicking, and stomping him all at the same time."  Tr. 176-77.  Taza said Jackson did not appear to be holding a gun, and that she did not see him turn to point his arm at the police, but admitted that it "was dark out."  Tr. 179.  Taza also saw the police put Jackson on a stretcher after an ambulance arrived, Tr. 180, and admitted that she saw the police do nothing else to his body after he fell, Tr. 183.  On cross-examination, Taza admitted that she did not know if Jackson had a gun.  Tr. 189.

Sandra testified that she was inside with Taza when they heard gunshots, and ran to a window to look outside.  Tr. 226-27.  Sandra said she then saw Jackson running through a vacant lot across the street, with police officers pursuing him. Tr. 228.  Sandra said that Jackson "had his hands up" as he ran.  Id.  After Jackson turned his head around to say something to the police, Sandra said, the officers shot him, and he fell.  Tr. 228-29.  Sandra said she could see "clearly" that Jackson had nothing in his hands when he was shot, Tr. 229, and that she never saw him turn to point his arm at the pursuing officers, Tr. 233.  After Jackson fell, Sandra claimed, she saw the officers "step[ ] on his back" and beat him.  Tr. 233.  An ambulance then took Jackson away.  Tr. 233-34.  On cross-examination, Sandra was impeached with

5

her three prior felony convictions, Tr. 249, as well as with the inconsistencies between her previous deposition testimony and her trial testimony, Tr. 250-61, 266-68, 272-73.  During cross-examination, Sandra claimed that she could hear Jackson tell the police he did not have a gun.  Tr. 268-69.  Sandra also admitted that she was not telling the truth during her deposition when asked how many times she had spoken to Mitchell after Jackson's shooting.  Tr. 276-77.  Sandra never saw an officer plant a gun on Jackson or move any shell casings after Jackson was shot.  Tr. 277-78.

Peggy Konrath, a forensic scientist with the Illinois State Police Forensic Science Command, Tr. 302, testified that she had examined the gun recovered at the scene, but found no fingerprints suitable for comparison to Jackson's fingerprints, Tr. 308-12.  Konrath explained that a number of environmental factors, such as skin condition or weather, could affect whether a person who handled a gun would leave fingerprints suitable for comparison, Tr. 318, and that she had tested several guns for fingerprints during her career and "more times than not" was unable to find prints suitable for comparison, Tr. 320.

At the close of Mitchell's case, the district court granted a directed verdict in favor of Sergeant Lascone and Officer Lopez.  Tr. 419.  The defendants then testified about the events of April 24, 2010, Tr. 422-98, 515-76, and the jury was played an audio recording of Sergeant Cascone's radio call for backup, Tr. 439.  On that recording, Sergeant Cascone can be heard screaming, "Emergency! Emergency! Shots fired at the police!" while several gunshots are being fired in the

background.  Def. Exh. 19 at 00:35-00:40.  When the dispatcher asks for Sergeant Cascone's location, Sergeant Cascone repeats, "Emergency!  Shots fired at the police!  Shots, shots fired by the police!  Six-one and Prairie.  Offender down!  Offender down!"  Id. at 00:46-00:53.  Sergeant Cascone also informs the dispatcher that a white Buick with two male occupants had fled east from the site of the shooting, id. at 01:03-01:15, and requests an ambulance, id. at 01:27-01:30.

At the close of the evidence, the district court instructed the jury, which then retired to deliberate shortly after 3 p.m.  Tr. 835, 837.  Before the jury began its deliberations, the district court asked the jurors to "remember . . . that we did have Monday already built in, and so there's no need to rush if you don't need to, but the time that you need is up to you.  There is no right or wrong on that.  That's up to you the jury."  Tr. 835.  At 5 p.m. that day, the district court advised Mitchell's counsel by phone that it was going to release the jury and instruct them to resume their deliberations the following Monday at 9 a.m.  Tr. 839-40.  When the district court, outside the presence of counsel, summoned the jurors to release them for the weekend, the foreperson advised the court that the jury had reached a verdict with respect to one defendant.  Tr. 840.  The court informed the jury that it would have to return on Monday to continue its deliberations

> [u]nless you think you can get this done in a half an hour or an hour or so.  And again, I don't like the idea of putting time parameters on you as far as so that it's rushed.  So you can go back and have a conversation and come out and tell me what your feelings are on that.  But again, we were scheduled to be here till Tuesday.  I really would hate to push you till very late and as it gets dark without you all having planned for that.

7

Tr. 840-41.  The court then advised counsel for the parties that the jury was determining whether it could complete its deliberations that day, and that it did not intend to allow them to stay more than an hour longer if they continued their deliberations; Mitchell's counsel repeatedly stated that she was "[o]kay" with proceeding in this manner.  Tr. 841-42.  The court further advised counsel to be present at the courthouse in case the jury returned with a verdict.  Tr. 842.  At 5:30 p.m. that day, the court reiterated that, when it was preparing to release the jury, the jurors had "asked to have a bit more time to decide whether they wanted to come back on Monday or whether or not they wanted to continue to deliberate.  And the next thing we knew is that after about 45 minutes there was a verdict, so that was the result."  Tr. 844.  The jury then returned a verdict in favor of the defendants on all of the claims against them.  Tr. 845-46.

Mitchell then moved for a new trial, arguing that the district court had "erred in keeping the jury late into the afternoon on Friday, March 7, 2014, particularly knowing that at least one juror needed to be home early in the evening for religious reasons."  R. 98 at 2.  According to Mitchell, this "placed at least one of the jurors under tremendous pressure to agree to a verdict so that she could get home.  Given the serious nature of the case, as well as the tremendous time and effort everyone, including the Court, put into the matter, failing to earlier dismiss the jury caused Plaintiffs [sic] a grave injustice."  Id.  Mitchell also argued that "no reasonable jury could have concluded that the Defendant Officers were justified in killing Izael Jackson."  Id. at 5.  The district court denied that motion, concluding that there was

"no indication that the jury was improperly hasty in reaching their verdict." R. 106 at 3. To the contrary, the court explained, it had given the jurors the option of continuing their deliberations that evening or returning on Monday, and had specifically informed the jury that they were under no time limitations in conducting their deliberations. Id. at 2-3. The court also noted that Mitchell had "asserted but did not develop her argument that the verdict was against the manifest weight of the evidence," and held that such a "conclusory statement that the jury could not have rendered a reasonable verdict in the time in which it deliberated is insufficient to warrant a new trial." Id. at 4-5. Regardless, the court explained, that argument was meritless because

> a reasonable jury could have concluded based on the evidence presented by defendants that Jackson had a gun, fired upon the officers, and was shot while attempting to flee the scene. The jury could choose to disbelieve the only eyewitnesses not involved in the incident, Taza and Sandra Williams, and instead look to the sixteen bullet casings that were recovered, the gun that was found in Jackson's hand, and the audio recording of the incident that indicated multiple guns were being fired.

Id. at 5. Mitchell appeals. R. 107.

## SUMMARY OF ARGUMENT

_____

Both of Mitchell's challenges to the judgment here are waived. Mitchell never argued to the district court that a new trial was necessary because the court supposedly deceived her counsel into not being present when the jury was considering whether to continue deliberating, nor that the court had an improper *ex parte* communication with the jury, but argued only that the court should not

have allowed the jurors to continue their deliberations because one juror had religious obligations that evening.  And as the district court observed, Mitchell waived any argument that the verdict was against the manifest weight of the evidence by failing to develop that argument in her motion for a new trial.  Waiver aside, Mitchell's arguments are without merit.  Mitchell's attorneys were not prevented from objecting to the district court's decision to allow the jurors to briefly continue their deliberations, but were informed of that decision and indicated that they were "Okay" with that decision.  As for Mitchell's claim that the court had an improper *ex parte* communication with the jury, she does not explain how that communication on a housekeeping matter – whether to continue deliberating for a short time longer or return the next week – could possibly have affected the verdict.  Finally, the jury's verdict was not against the manifest weight of the evidence, but was supported by the officers' testimony, the forensic evidence showing that Jackson had fired several shots at the police, and the recording of Sergeant Cascone's call for backup.

## ARGUMENT

————

At trial, the jury heard extensive testimony that Jackson opened fire on Chicago police officers during a routine traffic stop and was killed when the officers returned fire in self defense.  Based on that evidence, the jury rejected Mitchell's claims and returned a verdict for defendants.  Mitchell's arguments for a new trial are waived and without merit – the district court never deceived her counsel or coerced the jury to return a verdict, and a reasonable jury could easily have found

for defendants on the evidence in this record.  Accordingly, this court should affirm.

## I.  MITCHELL HAS WAIVED BOTH OF HER ARGUMENTS ON APPEAL BY FAILING TO RAISE THEM BELOW.

Mitchell challenges the district court's denial of her motion for a new trial on two grounds, arguing that the jury's verdict against her was against the manifest weight of the evidence, Mitchell Br. 8-9, and that the district court deceived her counsel into believing that the jury would not deliberate further that day, preventing counsel from objecting to the jury's continued deliberations, id. at 10. This court need not consider either of these arguments because they are waived. First, as the district court expressly ruled, R. 106 at 4-5, Mitchell waived any argument that the jury's verdict was against the manifest weight of the evidence by failing to develop that argument in the district court.  In her motion for a new trial, Mitchell's entire argument regarding the weight of the evidence consisted of a single, conclusory sentence that "no reasonable jury could have concluded that the Defendant Officers were justified in killing Izael Jackson."  R. 98 at 5.  Such conclusory arguments are insufficient, and "waive[ ] any argument that the jury's verdict went against the manifest weight of the evidence."  Willis v. Lepine, 687 F.3d 826, 836 (7th Cir. 2012) ("Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough.").  In fact, the district court specifically relied on this language from Willis when it denied Mitchell's motion for a new trial.  R. 106 at 5.

Second, Mitchell waived any argument that the district court deceived her counsel into leaving the courtroom during the jury deliberations and coerced the

jury to return a verdict against her – on that issue, she made no argument at all in her motion for a new trial.  In that motion, Mitchell did not claim that the district court had denied her the representation of counsel by misleading her counsel into thinking the jury would be released for the day.  To the contrary, Mitchell admitted that, after the jury began its deliberations, the court had called her counsel to inform her "that it would release the jurors for the weekend" and then called her a second time "approximately a minute later" to inform her "that the jurors wanted to stay to complete deliberations."  R. 98 at 2.  Nor did Mitchell complain that the court had coerced the jury into staying to complete its deliberations, but rather only expressed her concern that, by "keeping the jury late into the afternoon," the court may have "placed at least one of the jurors under tremendous pressure to agree to a verdict so that she could get home" to observe the Sabbath.  Id.  Arguments never raised in the district court are waived on appeal.  E.g., Puffer v. Allstate Insurance Co., 675 F.3d 709, 718 (7th Cir. 2012).

Accordingly, this court should reject Mitchell's arguments concerning the weight of the evidence and the court's supposed deception and coercion on waiver grounds alone.

## II.    MITCHELL'S ARGUMENTS ARE WITHOUT MERIT.

If this court forgives Mitchell's waiver of both of her arguments on appeal, those arguments should be rejected.  This court reviews the district court's rulings on a motion for a new trial for an abuse of discretion, Galvan v. Norberg, 678 F.3d 581, 588 (7th Cir. 2012), and will reverse only if no reasonable person could agree

12

with the district court's ruling, Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004).  When, as here, the district court denies a motion for a new trial, this court's review is "extremely deferential, as opposed to [the]  somewhat more exacting review of a decision granting a new trial."  Galvan, 678 F.3d at 588 (quotation marks omitted).  No abuse of discretion occurred here.

For starters, nothing in the record supports Mitchell's claim that the district court prevented her trial counsel from objecting to the jury's continued deliberations.  Whatever objections Mitchell's counsel had to the district court's handling of the matter could have been raised when the court advised counsel that the jury was considering deliberating longer into the evening than originally expected.  But counsel did not raise any such objection; instead, Mitchell's counsel repeatedly said that she was "[o]kay" with how the district court had handled matters.  Tr. 842.  As for Mitchell's complaint that the district court had an *ex parte* communication with the jury, such communications warrant a new trial only if they involved "fundamental issues" rather than mere "housekeeping matters," United States v. Smith, 31 F.3d 469, 473 (7th Cir. 1994), and therefore are "likely to have affected the jury's verdict," United States v. Pressley, 100 F.3d 57, 60 (7th Cir. 1996).  A discussion whether to continue deliberating past a certain time is undoubtedly a housekeeping matter, and Mitchell does not claim that merely informing the jurors that they could keep deliberating if they wished was likely to affect the jury's verdict.  Nor could it be thought to have had such an effect – indeed, this court has recognized that even a specific "instruction to keep

13

deliberating does not warrant reversal." <u>United States v. Coffman</u>, 94 F.3d 330, 336 (7th Cir. 1996). And the jurors certainly would not have felt, as Mitchell implies, that the court was pressuring them to quickly return a verdict, given that the district court emphasized that it was not trying to rush them and that they could return Monday to continue deliberating if they liked. Tr. 841-42.

The court also did not abuse its discretion in rejecting Mitchell's request for a new trial on the ground that the verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only if "no rational jury could have rendered [that] verdict," <u>Galvan</u>, 678 F.3d at 589 (quotation marks omitted), such that the verdict "resulted in a miscarriage of justice," "cries out to be overturned," or "shocks our conscience," <u>Latino v. Kaizer</u>, 58 F.3d 310, 315 (7th Cir. 1995). None of these standards is satisfied here. As the district court recognized in denying Mitchell's motion for a new trial, a rational jury certainly could have rendered a verdict for the defendants on the evidence presented at trial – the defendant officers' testimony that they shot Jackson only after he opened fire on them was corroborated by the gunpowder residue on Jackson's hands, the gunshots that can be heard on Sergeant Cascone's emergency call, and the numerous shell casings found at the scene and confirmed to have been fired from Jackson's gun. In the face of that evidence, a jury could reasonably discredit the witnesses' testimony that Jackson was shot while running, unarmed, from the defendants.

# CONCLUSION

_____

The judgment of the district court should be affirmed.

Respectfully submitted,

STEPHEN R. PATTON
 Corporation Counsel

s/ Jonathon D. Byrer

BY:   JONATHON D. BYRER
Assistant Corporation Counsel
30 N. LaSalle Street, Suite 800
Chicago, Illinois 60602
(312) 742-4961

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)
_____

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i) because it contains 4,006 words, beginning with the words "JURISDICTIONAL STATEMENT" on page 1 and ending with the words "Respectfully submitted" on page 15. In preparing this certificate, I relied on the word count of the word-processing system used to prepare the brief, which was WordPerfect X3.

s/ Jonathon D. Byrer
JONATHON D. BYRER, Attorney

## CERTIFICATE OF SERVICE
_____

I certify that on January 4, 2016, I electronically filed the attached Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that one of the participants in the case is not a CM/ECF user. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participant:

Octavia Mitchell
606 E. Woodland #405
Chicago, IL 60616

s/ Jonathon D. Byrer

JONATHON D. BYRER, Attorney